**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

ADC CONSTRUCTION, LLC,

                     Petitioner

        -against-

THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, THE NEW YORK
CITY DISTRICT COUNCIL OF CARPENTERS
WELFARE FUND, THE NEW YORK CITY DISTRICT
COUNCIL OF CARPENTERS VACATION FUND,
THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS ANNUITY FUND, THE NEW YORK
CITY DISTRICT COUNCIL OF CARPENTERS
APPRENTICESHIP, JOURNEYMAN RETRAINING,
EDUCATIONAL AND INDUSTRY FUND, THE NEW
YORK CITY DISTRICT COUNCIL OF CARPENTERS
CHARITY FUND and THE NEW YORK CITY AND
VICINITY CARPENTERS LABOR MANAGEMENT
CORPORATION, by MICHAEL J. FORDE, and PAUL
O'BRIEN, Trustees

                 Respondents.
------------------------------------------------------------X

07 CIV 3943

JUDGE COTE

**NOTICE OF REMOVAL**

Index No.:



TO    THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT,
       SOUTHERN DISTRICT OF NEW YORK

     Respondents, THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS

PENSION FUND et al., by its attorneys O'DWYER & BERNSTIEN, LLP, respectfully alleges:

     1.     By this Notice of Removal, the defendant removes this action from the Supreme

Court of the State of New York, County of New York, to the United States District Court for the

Southern District of New York, pursuant to 28 U.S.C. § 1441(a) and (b) and § 1446(a) and (b).

2.    Upon information and belief, this action was commenced by petitioner by filing a an Order to Show Cause and Petition in the Supreme Court of the State of New York, in the County of New York, on April 20, 2007 and served on respondents April 20, 2007. A copy of the Order to Show Cause, Petition, and Exhibits bearing Docket No. 105298/07, is annexed hereto as Exhibit "A".

3.    The within is an action commenced by plaintiffs for a permanent stay of an arbitration relating to fringe benefits contributions due and owing under a collective bargaining agreement between the parties. Resolution of the issues underlying the claims will require determinations involving the related ERISA fringe benefit plans to which the contributions are owed.

4.    This Court has jurisdiction of this matter pursuant to the Employee Retirement Income Security Act § 502(e)(1) , which provides that the district courts have concurrent jurisdiction to the extent that the action relates to the operations of an employee benefit plan.

5.    This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure, and is filed with this court within 30 days after Plaintiff's service of the summons and complaint.

6.    Written notice of filing of this Notice of Removal will be given to Petitioner and a copy will be filed in the Supreme Court of the State of New York, County of New York, as required by 28 U.S.C. §1446(d).

WHEREFORE, respondent prays for the removal of the above-entitled action from the

Supreme Court of the State of New York, County of New York, to the United States District Court

of the Southern District of New York.


Dated:        New York, New York
              May 21, 2007

                                      Yours, etc.,

                                      O'DWYER & BERNSTIEN, LLP
                                      Attorneys for Defendant

                            By: _____
                                      ANDREW GRABOIS (3192)
                                      Paul O'Dwyer Way
                                      52 Duane Street
                                      New York, NY 10007
                                      Tel. No. (212) 571-7100
                                      Fax No. (212) 571-7124

# EXHIBIT A

At Individual Assignment Part 49
of the Supreme Court of the State of
New York, held in and for the
County of New York, at the
Courthouse, 60 Centre Street, New
York, New York on the 20 day of
_____April_____, 2007

PRESENT

    Hon.

        Justice.

-----------------------------------------------X

ADC Construction, LLC,

                        Petitioner,          Index No. 105298/07

    -against-                                ORDER TO
                                             SHOW CAUSE

The New York City District Council of Carpenters Pension Fund,
The New York City District Council of Carpenters Welfare Fund,
The New York City District Council of Carpenters Vacation Fund,
The New York City District Council of Carpenters Annuity Fund,
The New York City District Council of Carpenters Apprenticeship,
Journeyman Retraining, Educational and Industry Fund, The New
York City District Council of Carpenters Charity Fund and The
New York City and Vicinity Carpenters Labor Management
Corporation, By Michael J. Forde and Paul O'Brien, as Trustees,

                        Respondents.

-----------------------------------------------X

Upon reading and filing the annexed petition of Steven R. Montgomery, Esq.,
sworn to on April 19, 2007; and the exhibits annexed thereto and sufficient cause
appearing therefore, ~~it is~~ *And Steven Montgomery, Esq., of counsel to plaintiff
advising that he contacted legal counsel for defendant funds and
advised them of this application and was told that they would not
appear on the of instant application, it is*

        ORDERED, that Respondents appear and show cause at I.A.S. Part ___ of the
Supreme Court of the State of New York, held in and for the County of New York
located at Room 232, 60 Centre Street, New York, New York on the 30 day of
_____April_____, 2007, at ~~9:30 in the forenoon~~ *2:00 P.M.* or as soon thereafter as counsel may be
heard, why an order and judgment should not be made and entered herein as follows:

(a)    Pursuant to CPLR 7503, staying the arbitration requested by Respondents in this matter by way of it April 2, 2007 Notice of Intention to Arbitrate; and,

(b)    granting petitioners such other and further relief as may be just and proper.

ORDERED, that pending the hearing and determination of this application:

(a)    the arbitration of this matter shall be stayed and the arbitration hearing presently set for May 9, 2007 shall not proceed and that a new date for an arbitration hearing shall be set, if necessary and appropriate, following the hearing and determination of this application.

ORDERED, that service of a conformed copy of this order and the papers on which it is based be made upon Respondents at their address of 395 Hudson Street, New York, New York 10014, Attn: Legal Department of the Funds, by _Personal delivery_ on or before _April 20_, 2007 shall be deemed sufficient service.

ENTERED:

J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------------X
ADC Construction, LLC,

|  |  |
|---|---|
| Petitioner, | Index No. |
| -against- | VERIFIED PETITION |

The New York City District Council of Carpenters Pension Fund,
The New York City District Council of Carpenters Welfare Fund,
The New York City District Council of Carpenters Vacation Fund,
The New York City District Council of Carpenters Annuity Fund,
The New York City District Council of Carpenters Apprenticeship,
Journeyman Retraining, Educational and Industry Fund, The New
York City District Council of Carpenters Charity Fund and The
New York City and Vicinity Carpenters Labor Management
Corporation, By Michael J. Forde and Paul O'Brien, as Trustees,

                                              Respondents.
-------------------------------------------------------------------------------X

The Petition of ADC Construction, LLC, by its attorneys Sullivan Gardner PC,

upon information and belief, respectfully shows and alleges as follows:

1.      That at all times hereinafter mentioned the petitioner was and still is a

domestic corporation duly organized and existing under and by virtue of the laws of the

State of New York with a primary place of business located at 58-08 48th Street, Maspeth,

New York 11378.

2.      That at all times hereinafter mentioned, upon information and belief, the

Respondents were and still are entities licensed to do business within the State of New

York.

3.    This Petition is submitted in Support of an application for an Order pursuant to Article 75 of the CPLR staying the arbitration herein and directing that a Preliminary hearing be held to determine:

(a) whether the Respondents have complied with the terms of the collective bargaining agreement ("Agreement") between the parties and have served a notice of arbitration to resolve an issue which is not subject to the arbitration provision of the Agreement.

(b) whether Respondents notice of arbitration is acting in bad faith and not fair dealing to obtain payments outside of the Agreement.

4.    The Respondents by and through Respondents' attorney, served upon the Petitioner herein a Demand for Arbitration, a photocopy of which is annexed hereto as Exhibit "A" and made a part hereof. Said demand was received by petitioner on April 4, 2007, and the petition is being made within 20 days of receipt.

5.    The basis of the demand for arbitration is the Agreement between Petitioner and The New York City and Vicinity of the Brotherhood of Carpenters and Joiners of America ("Union").  A copy of the Agreement is annexed hereto as Exhibit "B".

6.    No previous application for the relief requested herein has been made to this or any other Court or Justice thereof.

7.      Petitioner moves to stay the Arbitration demanded by Respondents, pursuant to CPLR 7503(b), on the basis that Respondents have failed to comply with the terms of the Agreement and have violated their duty of good faith and fair dealing with the Petitioner with reference to the terms of the Agreement.

8.      Specifically, on or about February 12, 2007, the Respondents completed an audit of Petitioner's books and records to determine whether Petitioner has made all required Union welfare and benefit fund payments for the time period of January 1, 2004 through December 27, 2005. Petitioner full cooperated in that audit. Following the completion of that audit, Petitioner was notified that the Respondents were seeking $273,947.74 in delinquent payments plus an additional $2,805.25 which was to be paid to the "Promo Fund". The basis for this demand by Respondents were monies paid to two companies, Liberty Ventures, Inc. ("Liberty") and Cipico Construction ("Cipico"), during a two year period that ended over sixteen (16) months ago.

9.      With reference to the monies paid to Liberty, the Respondents were informed that Liberty is a consulting company. Liberty employs no carpenters or any other individual which would be part of the defined class of workers set forth in the terms of the Agreement. This fact was confirmed to Respondents in both an attorney letter as well as a letter from Liberty's President.

10.    As for the monies paid by Petitioner to Cipico these payments were for rent. This fact was also explained to Respondents in an attorney letter which included as enclosures cancelled rent checks for the time period of Respondents' **audit.**

11.    Despite the submission of documentary evidence and the assertions made in the attorney letter and letter of Liberty's President, Respondent have sought to proceed with this action despite full knowledge that the money they seek is unjustifiable and based upon payments which are in no way covered by the Agreement. Respondents are simply abusing the arbitration process in an attempt to intimidate Petition into paying some amount of money. In fact, Petitioner is investigating its other legal options including potentially filing an unfair labor practice complaint with the National Labor Relations Board and filing of a civil complaint against Respondents for their fraudulent conduct. Additionally, the issue before the Court is one of jurisdiction. The Court is not asked to decide the validity of the amount sought.

12.    The status quo is that the payments sought have not been made for a number of years. Respondent has not sought these payments for years and the monies sought are for a period of sixteen (16) to forty (40) months old. There will be absolutely no prejudice to Respondents from a temporary stay pending a hearing.

13.    I therefore respectfully request that the Court issue an order staying arbitration pending a hearing to determine whether the respondents have complied with the terms of the Agreement between the parties and have served a notice of arbitration to



14. Our office has informed Respondents of our intention to file the instant application with request for temporary relief. We were informed by Dan Ryan in the Legal Department for

resolve an issue which is not subject to the arbitration provision of that agreement and upon conclusion of that hearing issue a permanent stay and/or injunction of the arbitration.

DATED: New York, New York
          April 19, 2007

SULLIVAN GARDNER PC
Attorneys for Petitioner
ADC Construction, LLC
Steven R. Montgomery
475 Park Avenue South, 30th Floor
New York, New York 10016
(212) 687-5900

VERIFICATION

<u>Attorney Affirmation</u>

Brian Gardner states the following to be true under the penalties of perjury:

1.      I am counsel to Plaintiff ADC Construction LLC.  I am a member of the Bar of this Court and am familiar with the facts and proceedings in this lawsuit as they pertain to this Petition.

2.      I have read the foregoing Petition of Plaintiff ADC Construction LLC and know its contents to be true, except as to those matters alleged upon information and belief, which matters I believe to be true.

3.      The reason this verification is made by counsel for plaintiff is that its offices is located outside the County of New York, where counsel maintains its office.

4.      I base this verification on my review of the pleadings and other documents and conversations with certain persons related to Plaintiff ADC Construction LLC.

_____

Steven R. Montgomery

# EXHIBIT A

In the Matter of:

---------------------------------------------------x

THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND INDUSTRY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS CHARITY FUND, and THE NEW
YORK CITY AND VICINITY CARPENTERS LABOR-         NOTICE OF
MANAGEMENT CORPORATION, By MICHAEL               INTENTION TO
J. FORDE and PAUL O'BRIEN, as TRUSTEES,          ARBITRATE

       Petitioners,

      -against-

A D C Construction LLC.

       Respondent.

---------------------------------------------------x

PLEASE TAKE NOTICE, that the NEW YORK CITY

DISTRICT COUNCIL OF CARPENTERS PENSION FUND, NEW YORK

CITY DISTRICT COUNCIL OF CARPENTERS WELFARE FUND, NEW YORK

CITY DISTRICT COUNCIL OF CARPENTERS VACATION FUND, NEW YORK

CITY DISTRICT COUNCIL OF CARPENTERS ANNUITY FUND, NEW YORK

CITY DISTRICT COUNCIL OF CARPENTERS APPRENTICESHIP,

JOURNEYMAN RETRAINING, EDUCATION AND INDUSTRY FUND, NEW

YORK CITY DISTRICT COUNCIL OF CARPENTERS CHARITY FUND, and

THE NEW YORK CITY AND VICINITY CARPENTERS LABOR-

MANAGEMENT CORPORATION, by MICHAL J. FORDE, and PAUL

O'BRIEN as TRUSTEES, (the "Funds") hereby demand and intend, pursuant to the

APR-04-2007 14:09     58-08 48TH STREET                    718 628 5142    P.03/03

provisions of the collective bargaining agreement between A D C Construction LLC.

and the District Council of New York City and Vicinity of the United Brotherhood of

Carpenters and Joiners of America, to conduct an arbitration before Arbitrator Roger E.

Maher against A D C Construction LLC. with the respect to the following controversy:

Delinquent fringe benefit contributions due to the Funds for the period

1/1/2004 through 12/27/2005 in the amount of $324,772.8.

Pursuant to CPLR 7503 (c), unless you apply within twenty (20) days after the

service of this notice for a stay of the arbitration, you will thereafter be precluded from

objecting that a valid agreement was not made or has not been complied with and from

asserting in court the bar of limitations of time.

Dated:          April 2, 2007


By: _____

Steven C. Kasarda, Esq.
Counsel for Delinquencies &
Collections

To:      Roger Maher
         23 83rd Street
         Brooklyn, NY 11209-18

         and

         A D C Construction LLC.
         58-08 48th Street
         Maspeth, NY 11378
         Attn: Domenick Cipollone, President

VIA CERTIFIED MAIL
RETURN RECEIPT REQUEST    (To Employer)


TOTAL P.03

EXHIBIT B

# INDEPENDENT TIMBERMEN

# AGREEMENT

between

## A D C Construction LLC
## 58-08n 48th Avenue
## Maspeth NY 11378

and

# THE DISTRICT COUNCIL OF CARPENTERS
# OF NEW YORK CITY AND VICINITY, AFL-CIO

for

# TIMBERMEN'S LOCAL 1536

# JULY 01, 2002 - JUNE 30, 2006

13

## TIMBERMEN

INDEX

| | PAGE |
|---|---|
| A.J.R.E.I. Promotional Fund | 38 |
| Apprentice Manning | 21 |
| Area Jurisdiction | 4 |
| Arbitration | 31 |
| Auditing | 29 |
| Binding Subcontractor and Other Firms | 22 |
| Completeness of Agreement | 3 |
| Coverage of Additional Employees Under the Welfare and Pension Plans | 26 |
| Declaration of Principles | 2 |
| Drug Testing Clause | 21 |
| Effectuating Clause | 40 |
| Fringe Benefit Funds | 24 |
| Heavy Construction-Employees Covered | 10 |
| Heavy Construction Industry Fund (HCIF) | 37 |
| Holiday | 15 |
| Hours-Wages-Conditions | 12 |
| Inclement Weather Gear | 20 |
| Intoxicating Beverages or Use of Drugs | 21 |
| Job Injury-Medical Attention | 20 |
| Job Steward | 5 |

<u>INDEX</u>

| | <u>PAGE</u> |
|---|---|
| Jurisdictional Disputes | 9 |
| Legality | 39 |
| Liability for Subcontractors | 26 |
| Liquidated Damages | 27 |
| Make-Up Day | 21 |
| Miscellaneous | 35 |
| New York City & Vicinity Carpenter Joint Labor Management Fund | 30 |
| New York State | 36 |
| No Lockout-Strike-Work Stoppage | 6 |
| No Work Stoppage | 9 |
| Off-shift | 19 |
| Other Union Agreements | 9 |
| Overtime-Flexible Lunch-Overtime Meal-Job Steward | 15 |
| Payment of Wages | 14 |
| Procedures of Grievance-Arbitration | 7 |
| Purpose of Agreement | 1 |
| Scope | 9 |
| Sharpening of Tools | 20 |
| Shifts | 13 |
| Spirit of Agreement | 22 |
| Status Quo | 8 |

INDEX

| | PAGE |
|---|---|
| Storage of Tools and Clothing | 19 |
| Supplemental Fund | 29 |
| Surety Bond | 32 |
| Term-Renewal | 6 |
| Timberman Foreman Manning | 18 |
| Timekeeping Devices | 20 |
| U.B.C. National Health & Safety, Apprenticeship Training, and Education and Development Funds | 31 |
| Union Security - Union Visitation-Job Steward | 5 |
| Variable Shift Commencement | 18 |
| Welfare Fund-New York State Disability | 26 |
| Working Job Steward | 18 |
| Work Stoppage for Default in Fringe Benefit Fund Contributions | 27 |

**THIS AGREEMENT** made and entered into this 1st day of July 2002 , and effective as of July 01, 2002, by and between

### A D C Construction LLC
### 58-08n 48th Avenue
### Maspeth NY 11378

**HEREIN REFERRED TO AS**
**(THE "EMPLOYER")**

**and the**

**DISTRICT COUNCIL OF NEW YORK CITY AND**
**VICINITY OF THE UNITED BROTHERHOOD OF**
**CARPENTERS AND JOINERS OF AMERICA**
**AFFILIATED WITH THE AFL-CIO, WASHINGTON, DC**
**HEREIN REFERRED TO AS**
**(THE "UNION" and/or THE "DISTRICT COUNCIL")**

for Timberman's Local No. 1536. NOW, THEREFORE, in consideration of the mutual promises and covenants hereinafter set forth, the parties agree as follows:

### ARTICLE I

#### Purposes-Declaration of Principles

Section 1 - Purposes

The purposes for which this Agreement is entered into are as follows:

(a)     prevent strikes and lockouts;

(b)     facilitate peaceful adjustment of grievances and disputes between the Employer, employee and Union;

(c)     prevent waste, unnecessary and avoidable delays, which result in unnecessary costs and expense to the Employer, and Union, and the loss of wages and fringe benefits to the employee;

14

and expense to the Employer, and Union, and the loss of wages and fringe benefits to the employee;

(d)    enable the Employer to secure at all times sufficient forces of skilled workmen;

(e)    provide as far as possible for the continuous employment of labor;

(f)    provide that employment hereunder shall be in accordance with conditions and at wages and fringe benefits herein agreed upon.

(g)    bring about stable conditions in the Industry;

(h)    keep costs of work in the Heavy Construction Industry as low as possible consistent with fair wages and proper working conditions, as provided for hereunder;

(i)    continue the custom and practice heretofore prevailing for many years on Heavy Construction Work of agreement as to the terms and conditions of employment, and as to the necessary procedure for amicable adjustment of all disputes or questions that may arise.

<u>Section 2 - Declaration of Principles</u>

Both parties to this Agreement acknowledge that this Agreement is the uniform agreement for the Heavy Construction Industry and its execution will further the interests of said Industry. This Agreement will be interpreted under the following principles:

(a)    that there shall be no limitation as to the amount of work an employee shall perform during his working day, it being understood that said employee shall perform a fair and honest day's work, within the limits of safety;

(b)    that there shall be no restrictions on the use of machinery, tools or appliances, within the limits of safety. If an employee is required to use powder actuated tools, he is to be qualified to use said powder actuated tools, by securing from the tool

2

manufacturer, or equally responsible certifying agency agreed upon by both parties hereto, an Operator's Card or similar proof of qualification and the Union shall cooperate with the Employer and tool manufacturer in having the employee expeditiously qualified. No powder actuated tool shall be used that has not been previously approved by the New York City Board of Standards and Appeals;

(c)    that there shall be no restriction on the use of any raw or manufactured materials, except prison made;

(d)    that no person shall have the right to interfere with employees or workmen during the working hours;

(e)    that employees are at liberty to work for whomsoever they see fit, and they are entitled to and shall receive the wages and fringe benefits agreed upon as hereinafter set forth in this Agreement;

(f)    that Employers are at liberty to employ and discharge, whomsoever they see fit, providing that no person shall be discharged without good cause;

(g)    the Employer and the Union agree that they have not, and will not discriminate because of race, creed, color, national origin, age, sex, disability, marital status, sexual orientation, citizenship status or Union membership against any individual.

For the purpose of this **Article**, "citizenship status" means the citizenship of any person or the immigration status of any person lawfully residing in the United States who is not a citizen or national of the United States.

## Section 3 - Completeness of Agreement

It is understood that the Purposes and Declaration of Principles, herein set forth, are a part of this Agreement and said Purposes and Principles govern all parties hereto in the performance thereof and

3

shall be complied with as conditions of this Agreement. The parties hereto enter into this Agreement and agree to carry out, conform and to comply with its terms and provisions as provided and set forth herein by reason of the mutual advantages of so doing and in order to effectuate and provide for the carrying out and putting into effect, during the term hereof, the Purposes and Principles of this Agreement.

## ARTICLE II

### Area Jurisdiction

The Employer hereby recognizes the Union as the exclusive collective bargaining representative of all employees covered by the jurisdiction of the Union as described herein. This Agreement shall cover work performed by or on behalf of a signatory Employer hereto in the Heavy Construction field, as hereinafter defined in **Article VIII**, when said work is to be performed in whole, or in part, within the territorial jurisdiction of the Union. Said jurisdiction shall include:

In New York State the Counties of:

| | |
|---|---|
| Bronx | Queens |
| Kings | Richmond |
| Nassau | Suffolk |
| New York | Westchester |

All of the Islands in and all the waters of the adjacent Harbors, Rivers, Bays, Atlantic Ocean, and Long Island Sound.

If the Employer engages in any class of work not embodied in Heavy Construction Work, as hereinafter defined, both parties shall comply with all of the Union conditions then existing in that class of work.

4

## ARTICLE III

### Union Security - Union Visitation - Job Steward

#### Section 1 - Union Security

All employees who are members of the Union at the time of the signing of this Agreement shall continue membership in the Union. All other employees covered by this Agreement must become members of the Union on or after the seven (7) days following the beginning of employment or the date of this Agreement, whichever is later, and must maintain their membership in good standing in the Union as a condition of continued employment. If the provisions for Union security clauses are modified by Congress during the term of this Agreement, this clause alone will be open for negotiation.

#### Section 2 - Union Visitation

Authorized representatives of the Union shall be allowed to visit jobs, and interview the Employer and employees covered by this Agreement, but shall in no way interfere with or hinder the progress of the work.

#### Section 3 - Job Steward

The Timberman job steward shall be placed on the job by the Union. The steward shall perform the regular duties of a Timberman but shall be allowed sufficient time to perform his duties as steward. If his duties as a Timberman are performed in a manner not satisfactory to the Employer he may be discharged by the Employer and shall be replaced by another Timberman selected by the Union. If his duties as a steward are performed in a manner not satisfactory to the Union, he shall be discharged by the Employer at the request of the Union and a replacement shall be selected by the Union. When a signatory Contractor lays-off a shop steward during continuous employment, the Contractor must notify the Union and have a meeting on the job with the Union within twenty-four

5

(24) hours.  If termination takes place a letter must be sent to the Union.


## ARTICLE IV

### Term - Renewal

This Agreement shall continue in effect until and including June 30th, 2006.


## ARTICLE V

### Disputes

### Section 1 - No Lockout - Strike - Work Stoppage

The Employer expressly agrees that it will not lock out its employees covered by this Agreement.

The Union expressly agrees not to strike or in any other manner stop or hinder work covered by this

Agreement.  It is agreed that under no circumstances shall there be strikes, lockouts, or work

stoppages, both parties agreeing to settle any question or dispute that may arise from any of the

parties hereto by submitting same for determination as herein provided, with the express agreement

that the parties hereto will honor, obey, be bound by and carry out such decision or determination

upon any question or dispute which may be submitted.  The Union will not call or sanction any strike

or concerted stoppage during the term of this Agreement except for:

(1)    the Employer's refusal to submit a matter to arbitration, pursuant to the arbitration
       clause of this Agreement;

(2)    the Employer's failure to comply with any decision of any Board of Arbitration
       established hereunder within twenty (20) working days after such decision, unless
       appealed to a court of competent jurisdiction, which grants a stay, and,

(3)    any other reason explicitly provided for in this Agreement.

6

Section 2 - Procedures of Grievance - Arbitration

For the purpose of settling disputes between the parties hereto as to any claims of violation of this Agreement, or of any dispute or breach that may arise in connection therewith, or for construing the terms and provisions thereof, the following procedure is established:

(a)     Either party may advise the other of an alleged grievance, in writing, and the party alleging the grievance may call for a meeting to be held not less than twenty-four (24) hours after receipt of the grievance notice, at a place designated by the party calling the grievance. The Board deciding the grievance shall consist of two (2) representatives of each party. No member of the Board may be a member of the Local Union or Employer involved in the grievance. Both parties to the grievance shall be given full opportunity to be heard and present witnesses. The grievance shall be resolved by majority decision. At each grievance hearing one of the arbitrators listed below will be chosen by random selection to hear the grievance should it reach the arbitration stage. If the grievance is not resolved within 72 hours of notification thereof, as set forth above, or if the agreement reached is not complied with by the guilty party within twenty-four (24) hours after notification of the agreement, either party may proceed to arbitration immediately.

(b)     Any grievance not resolved pursuant to (a) above, shall be submitted to arbitration before one of the following three (3) arbitrators:

1) Roger Maher                    2) Robert Herdoz

3) Joseph Lipowski

The arbitrator shall conduct a hearing in such manner as he shall consider proper and shall serve as sole arbitrator of the dispute between the parties. The arbitrator shall

7

have the right to conduct an ex parte hearing in the event of the failure of either party to be present at the time and place designated for the arbitration, and shall have the power to render a decision based on the testimony before him at such hearing. The decision of the arbitrator shall be final and binding upon both parties and may be entered as a final decree or judgment in the Supreme Court of the State of New York or in a court of appropriate jurisdiction in any state where such decision shall be rendered. The costs of arbitration, including the arbitrator's fee, shall be borne equally by the Employer and the Union. It is the intent of the parties hereto that all disputes between them, both within and outside of the Agreement, shall be submitted to arbitration, as provided herein, and that no defense to prevent the holding of the arbitration shall be permitted. Service of any document or notice referred to above, or service of any notice required by law in connection with arbitration proceedings, may be made by registered or certified mail.

(c)    This **Article** is not, in any manner, meant to prohibit or restrict the Union's right to strike or withhold services upon the expiration of this Agreement or any extension hereof or under the terms and conditions set forth in **Article XI, Section** 5 hereof.

## Section 3 - Status Quo

Until a decision shall have been rendered, neither party shall take any action of any character as to the complaint, statement or matter in question.

8

## ARTICLE VI

### Jurisdictional Disputes

Section 1 - Scope

(a)    The Employers bound by this Agreement recognize the jurisdictional claims of the United Brotherhood of Carpenters and Joiners of America. Both sides are bound by the decisions of the New York Plan for the Settlement of Jurisdictional Disputes and of the National Joint Board for the Settlement of Jurisdictional Disputes, prior to July 1, 1975.

Section 2 - No Work Stoppage

It is agreed that where a jurisdictional dispute arises, there shall be no stoppage of work by trades affiliated with the AFL-CIO, and the trade in possession of the work shall proceed with the job and the question in dispute shall be submitted by the trades to the Panel, authorized for settlement of jurisdictional disputes for decision.

## ARTICLE VII

### Other Union Agreements

It is agreed that the Union and the Employer will carry out this Agreement in all details, regardless of whatever conditions and wages exist for members of any other Local Union, whether or not employed in Heavy Construction Work.

9

## ARTICLE VIII

### Heavy Construction Work - Employees Covered

#### Section 1 - Heavy Construction Work

Heavy Construction Work, where referred to in this Agreement is hereby defined as the Construction of Engineering Structures and Building Foundations, exclusive of the Erection of Building Superstructures since this latter work is agreed to be a separate and distinct branch of the Construction Industry.

#### Section 2 - Employees Covered and Work Performed

(a)     This Agreement is applicable to qualified Journeyman Timberman, Journeyman Timberman Foreman, Timberman Apprentices 1st, 2nd, 3rd and 4th year and New York Plan Trainee(s) who are employed under the classifications as set forth in **Article IX, Section 6** of this Agreement.

(b)     Timbermen shall perform the following work:

   (1)     installing, maintaining and removing of all wooden sheeting, wooden bracing, shoring and support systems for:

      (i)     sides of excavations;

      (ii)    all temporary roadways, bridges and decks;

      (iii)   all temporary rough timber work, including but not limited to lagging in subways, tunnels, sewers, trenches, sidewalk vaults and similar construction.

   (2)     installing, maintaining and removing of all temporary steel sections including all steel bracing, and waling, all plates, deck beams, cap beams, and decking of any substance on sewer and subway construction;

   (3)     stripping or removing of wood or steel forms for concrete on all general

10

engineering construction and all other work generally classified as being under the Timbermen's jurisdiction;

(4)    Timbermen shall continue their historical performance of work with relation to moveable steel forms whether on wheels, rails, or overhead tracks, in subways and sewers;

(5)    all tools of the trade, i.e., burning for temporary steel installed by Timbermen shall be performed by Timbermen.

(c)    Timbermen, Apprentices and New York Plan Trainees shall perform the following work except where the performance of said work is in conflict with the terms and conditions of the Agreements between members of the Dockbuilders Local No. 1456 and the District Council of Carpenters:

(1)    carrying and distributing lumber and material to Timbermen;

(2)    hooking and unhooking the load when a mechanical apparatus is used to distribute material to the Timbermen;

(3)    assisting a Timberman when two (2) men are necessary to operate a power or circular saw;

(4)    assisting a Timberman when two (2) men are necessary to drive wood-sheeting with a jackhammer or power hammer;

(5)    generally assisting the Timbermen in the performance of their duties provided that the Timberman Helper is recognized as a trainee who will become qualified as a Timberman.

After material has been originally deposited on the site of the project, the Timbermen, Apprentices, and New York Plan Trainees shall further be employed in:

11

(1)    loading and unloading lumber and material from any conveyance;

(2)    carrying, oiling and stacking of lumber and materials to be used by Timbermen;

(3)    carrying of all lumber and materials to and from the mill on the project;

(4)    handling of all lumber and materials which are to be set or prepared on the job site for use on the job site by Timbermen;

(5)    salvaging, cleaning and oiling of all lumber and material that are to be reused on the project by Timbermen.

All the above in accordance with existing jurisdictional precedents in the area.

## ARTICLE IX

### Hours - Wages - Conditions

<u>Section 1 - Hours of Work</u>

(a)    Eight (8) hours shall constitute a day's work. Forty (40) hours shall constitute a week's work. Any failure to work these hours gives the Employer the right to pay only for hours actually worked and the Employer may deduct from the employee's wages and fringes the value of the time period not worked less than eight (8) hours. A Timberman cannot work more than eight hours in a twenty-four (24) hour period unless it is determined as overtime.

(b)    At the commencement of employment a Timberman Foreman, Timberman Apprentice 1st & 2nd year and Trainee 1st & 2nd year will be paid for days actually worked in the payroll week. At the termination of employment, said employees will be paid for days actually worked in the payroll week. If any said employee is laid off

12

from his work assignment and rehired within five (5) consecutive working days for the same work assignment, said employee shall be paid for the actual working days for which he was not employed, if he was not employed by another Employer during the layoff period. During the course of continuous employment on a project said employees shall be paid on a weekly basis, except for project shutdowns, and shall not receive holiday pay as an addition to their weekly pay, unless worked. All other employees covered by this Agreement shall be employed on a daily or hourly basis.

(c)    The Timberman Foreman shall be paid at least three ($3.00) dollars per hour more than the Journeyman Timberman. The General Foreman shall be paid at least six ($6.00) dollars per hour more than the Journeyman Timberman.

## Section 2 - Shifts

(a)    A single shift shall be a continuous nine (9) hours, starting at 8:00 a.m., except when necessary to conform with the provisions of this **Article IX, Section 7, subdivision (c)**, including one (1) hour for mealtime. The mealtime may be curtailed by one-half (½) hour.

(b)    When two (2) shifts are employed, the work period for each shift shall be continuous eight (8) hours.

Effective July 1, 1997, when two shifts are employed, each shift shall be eight and one-half hours with one-half (½) hour for lunch.

(c)    When three (3) shifts are employed, each shift will work seven and one-half (7 ½) hours but will be paid for eight (8) hours, since only one-half (½) hour is allowed for mealtime.

(d)    When two (2) or more shifts of Timbermen are employed, single time will be paid

13

for each shift.

(e)    A week shall start at 8:00 a.m. Monday and end at 8:00 a.m. Saturday, except when necessary to conform with the provisions of this **Article IX, Section 7, subdivision (c).**

## Section 3 - Payment of Wages

All wages payable under this Agreement shall become due and be paid on the job every week and not more than three (3) days' pay shall be held back. Wages shall be paid at the Employer's option either in cash or by check provided:

(a)    the check is a Todd Insured ABC System Payroll check or similar type of check, and the delivery of the checks shall be at least one (l) day preceding a banking day;

(b)    The Employer has complied with the provisions of **Article XII** relating to Bonding. If for any reason the Employer terminates the services of any employee working under this Agreement, the accrued wages of that employee shall be paid to him at the time of termination of his employment, otherwise waiting time shall be charged for accrued wages. If an employee shall, of his own volition, leave the services of his Employer, then his Employer may retain his wages until the next regular pay day. Should an employee be required to wait for his pay after the hours specified in **Article IX, Sections 1, 2 and 3**, except for reasons beyond the Employer's control, then in addition, the employee shall receive time and one-half for the first two (2) hours of waiting on pay day or layoff, and single time for any additional waiting time, except for Saturday, Sunday or holidays. However, such waiting time shall not exceed sixteen (16) hours. An employee claiming said waiting time shall be required to show proof that he was actually present on the job during the waiting time claimed.

14

Section 4 - Overtime - Flexible Lunch - Overtime Meal - Job Steward

    (a)    Time and one-half shall be paid for all work performed in excess of eight (8) hours per day, for all work performed in excess of forty (40) hours per week, and for all work performed on Saturdays. Sundays and holidays shall be at the double time rate, except when being performed under **Article IX, Section 2**, shifts.

    (b)    Flexible Lunch Hour

        Flexible Lunch -- may be taken for an employee or group of employees according to the following schedule:

                11:30 a.m. to 12:00 noon
                12:00 noon to 12:30 p.m.
                12:30 p.m. to 1:00 p.m.

    (c)    Overtime Meal

        For every four (4) hours of overtime worked, an employee shall be allowed one-half (½) hour for a meal time.

    (d)    Job Steward

        On variable shifts, the Steward is to work eight (8) hours.

Section 5 - Holidays

    (a)    Holidays shall be observed in accordance with the New York State Law and shall be as follows:

| | |
|---|---|
| New Year's Day | Labor Day |
| President's Day | Columbus Day |
| (3rd Monday in February) | Election Day (in a |
| Memorial Day(Decoration Day) | Presidential Election Year Only) |
| Independence Day | Thanksgiving Day |
| (4th of July) | Christmas Day |

If an employee does not work on said holiday he shall receive no pay for said day.

15

If an employee works on said holiday he will be paid only the double time rate. When work is performed in an area outside of New York City, conditions as to holidays shall prevail, except that provisions of this paragraph herein shall be operative within the jurisdictional territory of the Union.

(b)    Where the workday ends at 8:00 a.m. on a Saturday, Sunday, or holiday, the Employer may, at its discretion, define Saturdays, Sundays and holidays as beginning at 8:00 a.m. of the Saturday, Sunday or holiday, continuing until 8:00 a.m. of the following day, except when necessary to conform to the provision of **Article IX, Section 7, subdivision (c).**

Section 6 - Work Classifications - Wages - Total Fringes

(a)    Wage rates and fringe benefit contributions within the bargaining unit shall be determined and/or reallocated by the Union at its sole discretion, in conjunction with the fund trustees.

(b)    The rate of wages to be paid employees covered by this Agreement shall be as follows:

1. TIMBERMAN - GENERAL FOREMAN:

| Eff Date: | 07/01/02 | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|---|
| Wage | $38.61 | | | |
| Fringe | $24.91 | | | |
| Total W&F | $63.52 | | | |
| H.C.I.F. | $ 0.35 | $ 0.35 | $ 0.35 | $ 0.35 |

16

2.  TIMBERMAN - FOREMAN:

| Eff Date: | 07/01/02 | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|---|
| Wage | $35.61 | | | |
| Fringe | $24.91 | | | |
| Total W&F | $60.52 | | | |
| H.C.I.F. | $ 0.35 | $ 0.35 | $ 0.35 | $ 0.35 |

3.  TIMBERMAN - JOURNEYMAN:

| Eff Date: | 07/01/02 | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|---|
| Wage | $32.61 | | | |
| Fringe | $24.91 | | | |
| Total W&F | $57.52 | $60.78 | $64.04 | $67.30 |
| H.C.I.F. | $ 0.35 | $ 0.35 | $ 0.35 | $ 0.35 |

APPRENTICES

Apprentice wage increases may be deferred for reasons determined by the Joint Apprenticeship Committee or its training director by written notice to the Employer.

4. FOURTH YEAR TIMBERMAN APPRENTICE & NEW YORK PLAN TRAINEE

| Eff Date: | 07/01/02 | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|---|
| Wage | $26.09 | | | |
| Fringe | $17.16 | | | |
| Total W&F | $43.25 | | | |
| H.C.I.F. | $ 0.35 | $ 0.35 | $ 0.35 | $ 0.35 |

5. THIRD YEAR TIMBERMAN APPRENTICE & NEW YORK PLAN TRAINEE

| Eff Date: | 07/01/02 | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|---|
| Wage | $21.20 | | | |
| Fringe | $17.16 | | | |
| Total W&F | $38.36 | | | |
| H.C.I.F. | $ 0.35 | $ 0.35 | $ 0.35 | $ 0.35 |

6. SECOND YEAR TIMBERMAN APPRENTICE & NEW YORK PLAN TRAINEE

| Eff Date: | 07/01/02 | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|---|
| Wage | $16.31 | | | |
| Fringe | $17.16 | | | |
| Total W&F | $33.47 | | | |
| H.C.I.F. | $ 0.35 | $ 0.35 | $ 0.35 | $ 0.35 |

7. FIRST YEAR TIMBERMAN APPRENTICE & NEW YORK PLAN TRAINEE

| Eff Date: | 07/01/02 | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|---|
| Wage | $13.04 | | | |
| Fringe | $17.16 | | | |
| Total W&F | $30.20 | | | |
| H.C.I.F. | $ 0.35 | $ 0.35 | $ 0.35 | $ 0.35 |

Section 7 - Conditions

(a)    Timberman Foreman Manning

One (1) Timberman Foreman shall be employed for every six (6) Timbermen, and he shall work in a supervisory capacity. The employment of Timberman Helper Foremen shall be determined by the Employer. Each Foreman must remain with his gang at the job site.

(b)    Working Job Steward

There shall be a Working Job Steward appointed by the Union or its Representative. Where Timbermen, Timbermen Apprentices, and New York Plan Trainee(s) are employed overtime, the Steward shall be notified before they start overtime work. On variable shift jobs, the Working Job Steward is to work only eight (8) hours.

(c)    Variable Shift Commencement

A shift commencing Monday through Friday, shall begin two (2) hours before and two (2) hours after normal starting time, in one-half hour increments. In varying

18

to collect the same.

(b)        No Limitations

This **Section** shall in no way relieve or excuse any Employer of the obligation to provide the required Bond regardless of the business form under which the Employer does business, nor shall this provision limit the personal liability of any corporate officers or shareholders based on operation of law.

(c)        Application to Non-Complying Employer

Any Employer commencing work in violation of this **Section** shall be in violation of **Article XI** relating to the Funds.

Section 5 - Bond Amount

The Funds' Trustees shall determine the amount of Bond the Employer is required to provide, but such amount shall be no less than an amount equal to sixty days of estimated contributions. The Employer shall provide a Bond in the minimum amounts as follows:

| | |
|---|---|
| an **Employer** employing 1 to 3 **Employees** | $ 10,000.00 |
| an **Employer** employing 4 to 7 **Employees** | $ 15,000.00 |
| an **Employer** employing 8 to 15 **Employees** | $ 20,000.00 |
| an **Employer** employing 16 to 20 **Employees** | $ 30,000.00 |
| an **Employer** employing 21 to 25 **Employees** | $ 75,000.00 |
| an **Employer** employing 26 and over **Employees** | $125,000.00 |

The Funds may seize the bond if the Funds determine that the Employer has failed to make required contributions to the Funds or if the Employer has violated the Funds' Collection Procedures. The amount of the bond shall be subject to increase or decrease, in the discretion of the Trustees, depending on the number of employees employed on a particular job site or period.

34

## ARTICLE XIII

### Miscellaneous

a)  All Timbermen will be given time to have coffee in the morning and wrap up their tools and wash up before quitting time.

b)  Any Contractor found guilty of offering cash to Timbermen for hours worked which is less than the wage rates collectively bargained in this agreement shall pay a fine of five thousand ($5,000.00) dollars to the Timbermen relief and charity fund after he or she has paid all monies that were due the benefit funds.  This will be decided through the Collective Bargaining Agreement grievance and arbitration clause.

c)  The Employer will make every effort to give reasonable notice of overtime and a Timberman will never be penalized for being unable to work the overtime, nor shall the Timberman be compensated for any overtime not worked.

d)  No Timberman is to start work before the designated start time unless it is determined to be overtime.

e)  Other than an emergency, notice of all overtime work should be given to the Timberman before noon if possible.

f)  Every signatory Employer party to this contract shall notify the District Council on its specified form, by fax, certified mail, or telephone, of the awarding of any contract on which any of the work described in **Article VIII** hereof shall be performed by said Employer or a Subcontractor.  Said notice shall include the location of the job, the name and address of the Contractor or Subcontractor involved, and the identity of the General Contractor.  The District Council shall then provide the Employer with a specified job identification number for that specific job.  This identification number will be utilized for the District Council job

35

referral list, Steward's reports, and summary/remittance reports. In addition, the Foreman, General Foreman and/or the first employee is required to report his/her presence on said jobsite and obtain this identification number.

Failure to comply with this **Section,** shall be a breach of this Agreement and shall authorize the Union to remove its members from any job on which said Contractor or Subcontractor has not complied with this notice. The aforesaid notice shall be given within thirty (30) days of the award of a contract, and in any event, prior to the commencement of work, or after the cessation of work, prior to the recommencement thereof. It is understood that the provisions of this **Section** will be strictly enforced by the Employer, as set forth above, a pre-job conference will be held, if one is requested by the Union. The Employer shall fax a notice of job closure to the District Council to signify the completion of the job.

## ARTICLE XIV

### New York State

The Employer agrees that if it performs any service or work described in the Trade Agreements of the Local County Carpenter Union within the geographic jurisdiction of the state, it shall be bound by all the terms and conditions of the Trade Agreement applicable to the location where said service or work is being performed for the period of time that said service or work is being performed in said location in the same manner as if it were a direct signatory to the applicable Trade Agreement, provided the Union furnishes to the Employer said Trade Agreement for review.

36

## ARTICLE XV

### Heavy Construction Industry Fund

In order to adequately protect the Heavy Construction Industry and in the interests of the employees in the Industry, each Employer shall contribute to the Heavy Construction Industry Fund thirty-five ($0.35) cents effective July 01, 2002, applied only to the straight time payroll of each employee. No contributions shall be made to this Fund on the premium portion of the overtime of the payroll of the employees covered by this Agreement.

This Fund is designed for, but not limited to, the following purposes: 1) to increase employment opportunities through promotional activities which will increase the use of the Industry and its employees covered under this Agreement; 2) to acquaint Employers and employees with the most efficient safety regulations for the safety of the employees as well as the training of employees in first aid and other safety programs; 3) to provide financial aid, guidance and assistance to the New York Plan for Training to assist the training of minorities and women for employment in the Industry in conformity with various governmental regulations; 4) to conduct educational research directed at the utilization of new and safer machines and equipment for the protection of employees covered under this Agreement; 5) to provide and to assure equitable Industry labor relations through established Grievance Panels and Arbitrations and for the expeditious and equitable hearings of the grievances of employees and Employers covered herein; 6) to assist in defraying the costs of the time spent by trustees representing management in connection with their work for and attendance at trustee meetings of the Benefit Funds in behalf of and for the benefit of the employees covered herein and 7) for the administrative costs in supervising and administering the above in behalf of this Fund.

Payment to this fund shall be included in the consolidated stamp. The bank servicing the Benefit

Funds shall deliver all such contributions to the Heavy Construction Industry Fund after verifying that the amount of each such contribution has been correctly computed by the Employer. All costs for clerical, legal and administrative services will be borne by the Heavy Construction Industry Fund. The Fund agrees to indemnify and to hold harmless the Union from any and all claims, actions and/or proceedings arising out of said Fund. There shall be no commingling of the check with Funds of the Union. The parties are authorized to adopt other procedures to implement the collection of this contribution.

Each Employer voluntarily authorizes the collection of the contribution per hour Fund and each Employer shall be bound by all terms and conditions of the Agreement and Declaration of Trust of the Heavy Construction Industry Fund and by all By-Laws adopted to regulate said Fund.

## ARTICLE XVI

### A.J.R.E.I. Promotional Fund

In the event an Employer does not wish to be bound to contribute to the Heavy Construction Industry Promotional Fund, as set forth in **Article XV** hereof, then said Employer hereby agrees to be bound to contribute thirty-five ($0.35) cents per hour, applied only to the straight time payroll of each employee, to the Apprenticeship, Journeyman Retraining, Educational and Industry Promotional Fund. No contributions shall be made to this Fund on the premium portion of double time or overtime of the payroll of the employees covered by this Agreement. This contribution is in addition to the contribution of thirty-five ($0.35) cents per hour provided for in **Article XI** of this Agreement.

38

## ARTICLE XVII

### Legality

Any provision of this Agreement which provides for Union security or Employment in a manner and to an extent prohibited by any law or the determination of any governmental board or agency, shall be and hereby is of no force or effect during the term of any such prohibition. It is understood and agreed, however, that if any of the provisions which are hereby declared to be of no force or effect because of restrictions imposed by law is, or are, determined either by Act of Congress or other legislative enactment or by a decision of the court of highest recourse to be legal or permissible, then any such provisions shall immediately become and remain effective during the remainder of the term of this Agreement. In the event that there shall be changes in applicable laws as to Union security, the parties shall negotiate any provisions concerning Union security.

In the event that any provision of this Agreement shall be declared to be in violation of law, the remaining provisions of this Agreement shall continue in full force and effect.

# ARTICLE XVIII

## Effectuating Clause

The parties hereto make and enter into this Agreement, in witness whereof, we, their duly authorized and empowered representatives, have hereunto set our hands and seal this _____ day of _____ , 200 .

**EMPLOYER: A D C Construction LLC**

By:_____    DATE: _____

DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO

By:_____
AUTHORIZED SIGNATURE
OF THE DISTRICT COUNCIL

The party of the First Part, herein referred to as the Employer, signatory to this Agreement, hereby acknowledges receipt of copies of the Agreement and Declaration of Trust of the New York City District Council of Carpenters Welfare Fund; Pension Fund; Apprenticeship, Journeymen Retraining, Educational and Industry Fund; Annuity Fund; United Brotherhood of Carpenters and Joiners of America Fund; Vacation Fund; New York City and Vicinity Carpenters Labor Management Fund; Supplemental Funds; and Vacation Fund.

**EMPLOYER: A D C Construction LLC**

By:_____

**Promotional Fund contribution acknowledgment**

Apprenticeship, Journeyman Retraining, Educational and Industry Promotional Fund

EMPLOYER:

By:_____

or

Heavy Construction Industry Promotional Fund

EMPLOYER:

By:_____

15